## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                                    Case No. 16-31095-DHW
                                                          Chapter 13
DELANDO MONTEZ ATCHISON,

    Debtor.

## MEMORANDUM OPINION

The debtor's proposed chapter 13 plan, to which Vanderbilt Mortgage and Finance, Inc. (hereinafter Vanderbilt) objects, came on for confirmation hearing on July 18, 2016. While Vanderbilt objects to the plan's confirmation on a number of grounds, the initial dispute concerns whether the debtor's plan may modify Vanderbilt's rights under its claim.[1] Vanderbilt contends that the rights under its claim are nonmodifiable under 11 U.S.C. § 1322(b)(2). Here, the court will limit consideration of the plan's confirmation to the one issue of whether the Vanderbilt claim may be modified. Upon consideration of the undisputed facts, the briefs of counsel, and the controlling law, the Vanderbilt objection to confirmation will be overruled as to the proposed modification of its claim.

### Jurisdiction

The court's jurisdiction in this dispute is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because the matter at issue here concerns the confirmation of a plan, this is a core proceeding under 28 U.S.C. § 157(b)(2)(L) thereby extending this court's jurisdiction to the entry of a final order or judgment.

### Undisputed Stipulated Facts

On November 5, 2001, the debtor and Lakeisha V. Atchison executed a promissory note in favor of Oakwood Acceptance Corporation, LLC (hereinafter

---

[1]If the Vanderbilt claim is found to be modifiable, Vanderbilt further objects contending that the plan under values its collateral, offers too low an interest rate on its claim, and is not feasible.

Oakwood).   The purpose of the note was to finance the purchase of a 2001 Oakwood manufactured home.   The debtor and co-debtor granted Oakwood a security interest in the manufactured home.

On the same date as the note's execution, November 5, 2001, the debtor and co-debtor executed a mortgage in favor of Oakwood on realty located at 5039 US Highway 80 W., Selma, Alabama.   Said mortgage was properly perfected in Dallas County, Alabama.   The mortgage contained a Manufactured Home and Construction Loan Rider which provided that the manufactured home is affixed and "shall be conclusively deemed to be real estate" regardless of "whether or not the manufacturer's certificate of origin or the certificate of title to the manufactured home has been surrendered or cancelled."

The Alabama Department of Revenue issued certificates of title for the manufactured home notating Oakwood as the first lienholder.   The title has not been cancelled or surrendered.

Oakwood assigned all of its rights, title, and interest to and in the note and mortgage to Vanderbilt.   Vanderbilt is the current servicer for The Bank of New York Mellon.

While the parties' stipulated facts do not specifically provide that the debtor's manufactured home has become affixed to the land, the court assumes that this is the case, otherwise there would be no disputed issue here.

The debtor filed this chapter 13 case on April 29, 2016.   In his proposed amended plan, the debtor values Vanderbilt's collateral (the land and manufactured home) at $20,007.   Vanderbilt's claim is $58,925.14.   Hence, the plan endeavors to strip down Vanderbilt's lien to the value of the manufactured home and realty. Further, the debtor's proposed amended plan lowers the monthly payment to Vanderbilt from $592.56 to $577.76.

Conclusions of Law

Vanderbilt's objection to confirmation of the debtor's amended plan is predicated on its contention that its claim may not be modified pursuant to 11 U.S.C. § 1322(b)(2).   The Code provides in relevant part: "[T]he plan may ... modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, ...". 11 U.S.C. § 1322(b)(2) (emphasis added).   This provision protects undersecured home

mortgage claims from being "stripped down" under 11 U.S.C. § 506(a) to the value of the collateral in chapter 13 cases. *Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 327, 113 S. Ct. 2106, 124 L.Ed.2d 228 (1993); *In re Tanner*, 217 F.3d 1357, 1358 (11th Cir. 2000); *In re Bartolome*, 2007 WL 2774467 (Bankr. M.D. Ala. 2007); *In re Johnson*, 269 B.R. 246 (Bankr. M.D. Ala. 2001).

Here, the parties do not dispute that the debtor's manufactured home is his principal residence as that term is defined under 11 U.S.C. § 101(13A). Instead, they dispute whether or not the manufactured home is real property. To answer that question, this court must turn to the Alabama state law. *See In re Bartolome*, 2007 WL 2774467, at *2 ("Although federal bankruptcy law determines whether a mobile home at issue constitutes the 'debtor's principal residence', state law determines whether that same manufactured home constitutes real property."); *In re Johnson*, 269 B.R. 246, 248 (Bankr. M.D. Ala. 2001). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. U.S.*, 400 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); *In re McFarland*, 790 F.3d 1182, 1193-94 (11th Cir. 2015); *In re Manning*, 2007 WL 2220454, *4 (Bankr. N.D. Ala. 2007); *In re Moss*, 2007 WL 1076688, *2 (Bankr. S.D. Ala. 2007).

Under Alabama law, a manufactured home is personal property at the time of its sale. *See* ALA. CODE § 32–20-20(a) (requiring that manufactured homes in Alabama with designated model years of 1990 or later must have a certificate of title which is indicative of its chattel character); *Green Tree-AL LLC v. Dominion Res., L.L.C.*, 104 So. 3d 177, 180 (Ala. Civ. App. 2011); *In re Johnson*, 269 B.R. 246, 248 (Bankr. M.D. Ala. 2001)("Under Alabama law, a mobile home which is not permanently affixed to the land is personal property."); *Sharp v. Sharp,* 540 So.2d 1373, 1375 (Ala.1989); *First Alabama Bank v. Renfro*, 42 So. 2d 464, 467 (Ala. 1984).

Yet, Alabama law provides for an occasion when a manufactured home may become real property. The *Code of Alabama* provides:

> If a manufactured home not more than 20 model years old, as determined by the department, is permanently affixed to a parcel of real property and the ownership of the manufactured home and real property is identical, the original retail purchaser or lienholder for the original

retail purchaser as recorded on the certificate of origin or the titled owner or owners lienholder recorded on the certificate of title may apply for a cancellation of a certificate of origin or certificate of title through a designated agent and obtain from the Alabama Department of Revenue a certificate of cancellation of the certificate of origin or cancellation of the certificate of title to the manufactured home by delivering to the department, all of the following:

> (1) The certificate of origin or certificate of title to the manufactured home, or each separate certificate of origin or certificate of title if the manufactured home consists of more than one unit or, in lieu thereof, post a bond in accordance with the provisions of subdivision (2) of Section 32-20-24.

> (2) Lien release from lienholder as recorded on the certificate of title or, in lieu thereof, post a bond in accordance with the provisions of subdivision (2) of Section 32-20-24.

> (3) An affidavit executed by all who have an ownership interest in the manufactured home and the realty to which the manufactured home has become permanently affixed to the effect that the manufactured home is permanently affixed to the realty described in the deed and containing written verification from the judge of probate that the manufactured home has been recorded as being permanently affixed and recorded as real property in that county.

ALA. CODE § 32-20-20(b). Therefore, in order for a manufactured home to become realty, Alabama law requires 1) that the manufactured home be affixed to real property, 2) that the manufactured home and realty be owned by the same person or persons, and 3) that the certificate of origin or certificate of title be cancelled.

As earlier noted, the court assumes that the parties agree that the debtor's manufactured home has become affixed to the land. Further, it is undisputed that the manufactured home and the land on which it is located are both owned by the debtor. Hence, the first two elements of § 32-20-20(b) are satisfied. However, the third element for transforming a manufactured home from chattel to realty (the

cancellation of either the certificate of origin or certificate of title) is not satisfied. The parties have stipulated to this fact. Therefore, the debtor's manufactured home remains personal property under Alabama law. *See Green Tree-AL LLC v. Dominion Res., LLC*, 104 So.3d at 180 ("A manufactured home is personal property unless and until the certificate of title is canceled. To hold otherwise would render … § 32-20-20(b) meaningless and provide no field of operation for [its] application."); *Griffith v. Ames*, 105 So.3d 1220, 1222 (Ala. Civ. App. 2012).

At first blush, this result seems at odds with the traditional legal concepts regarding fixtures. "'Fixtures' means goods that have become so related to particular real property that an interest in them arises under real property law." ALA. CODE § 7-9A-102(a)(41). "A "fixture" is "an article which was once a chattel, but which, by being physically annexed or affixed to the realty, has become accessory to it and part and parcel of it.'" *Milford v. Tennessee River Pulp & Paper Co.*, 335 So.2d 687, 689-90 (Ala. 1978) (quoting *Farmers and Merchants Bank v. Sawyer*, 26 Ala. App. 520, 522, 163 So. 657, 658 (1935)). "A 'fixture' is judicially defined uniformly as an article of personalty which has become so affixed or annexed to realty as to become part of that realty, inseparable from it without damage to the underlying realty and therefore partaking of the legal incidents of the freehold and belonging to the owner of the realty." 136 Am. Jur. Proof of Facts 3d 357 (originally published in 2013).

Therefore, if chattel has become so affixed to the land to become part and parcel of the realty, how then could the cancellation of a certificate of origin or a certificate of title (requisites under Alabama law) have anything to do with its being treated as realty? The answer lies in the treatment specifically reserved for manufactured homes under Alabama law. For example, even if the manufactured home is affixed to the land, the manufactured home lienholder retains priority over the owner and lienholder of the realty. ALA. CODE § 7-9A-334(e) ("A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if: ... (4) the security interest is: (A) created in a manufactured home in a manufactured home transaction; and (B) perfected pursuant to a statute described in Section 7-9A-311(a)(2).").

Further, Alabama law authorizes the secured party with a perfected security interest, such as a manufactured home lienholder, to remove an affixed manufactured home on default of the purchaser. ALA. CODE § 7-9A-604(c). If the

lienholder does remove the affixed manufactured home pursuant to § 7-9A-604(c), damages are measured differently than they are measured for the removal of other fixtures not subject to a perfected security interest. ALA. CODE § 7-9A-604(d) (providing that the secured party is liable for the damage to the underlying realty caused by the fixture removal, but not for the diminution of the value of the property caused by the fixture's removal). Hence, although a manufactured home may become affixed, Alabama law explicitly protects a manufactured home lienholder by providing for the retention of priority and the ability to remove the fixture with a corresponding limitation on the resulting damages.

As long as the lienholder retains a perfected interest by way of the certificate of title, the manufactured home is always subject to removal even if it has become affixed to the land. Therein lies the significance of cancelling the certificate of title. Specifically, to effectuate a cancellation of the certificate of title, a lienholder must first release its lien. ALA. CODE § 32-20-20(b)(2). By releasing its lien, the creditor is essentially relinquishing its right to remove the manufactured home from the real property. Subsequently, an affidavit executed by all parties and verified by a probate judge is required. The affidavit is to include a provision that "the manufactured home has been recorded as being permanently affixed and recorded as real property in that county." ALA. CODE § 32-20-20(b)(3). Thus, it is only by cancelling the certificate of title in accordance with § 32-20-20(b) that a manufactured home ultimately becomes real property.

Finally, Vanderbilt maintains that even though the certificate of origin or certificate of title has not been cancelled, the manufactured home should be considered realty by virtue of the parties' contract, which provides that the manufactured home "shall be conclusively deemed to be real estate." In support of that contention, Vanderbilt points the court to *Custer v. Homeside Lending, Inc.*, wherein the Alabama Supreme Court held that "mortgage agreements are to be enforced as written, barring some contravention of public policy." 858 So.3d 233, 246 (Ala. 2003).

In *Custer*, the Supreme Court was considering a dispute over which party to a contract was responsible for maintaining insurance on collateral and the amount of the insurance coverage. The Court strictly enforced the terms of the parties' contract with respect to the insurance provisions. But, Alabama law does not weigh in on the issue of collateral insurance and coverage amounts. That subject is left entirely to the discretion of the parties to the agreement. Such is not the case with the issue of whether a manufacture home is realty or not. Instead, the Alabama

legislature has entered the field and created a multi-parted statutory scheme covering the subject and, in so doing, created a public policy respecting the issue. *See Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195, 199 (Ala. Civ. App. 2005) ("[I]t is generally recognized that the public policy of a state is to be found in its Constitution and statutes and judicial decisions. In order to ascertain the public policy of a state in respect to any matter, the acts of the legislative department should primarily be looked to, because a legislative act, if constitutional, declares in terms the policy of the state." (quoting *Denson v. Alabama Fuel & Iron Co.,* 198 Ala. 383, 391, 73 So. 525, 529 (1916)); *Milton Construction Co. v. State Highway Department,* 568 So.2d 784 (Ala.1990) ("Many courts have cautioned against recklessness in condemning agreements as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning which it is the duty of the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law."). Here, the language of the parties' agreement not only disregards but attempts to negate these statutory requisites, thereby contravening established public policy and is not enforceable.

## Conclusion

For these reasons, the court finds that the debtor's manufactured home is personal property under Alabama law. Accordingly, Vanderbilt's objection to the confirmation of the debtor's chapter 13 plan on the ground that its claim is non-modifiable pursuant to 11 U.S.C. § 1322(b)(2) will be overruled. An evidentiary hearing to consider Vanderbilt's remaining objections to confirmation will be set.

Done this the 12th day of September, 2016.

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Richard D. Shinbaum, Debtor's Attorney
  Kristofor D. Sodergren, Vanderbilt's Attorney
  Sabrina L. McKinney, Acting Trustee